United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

J.J.[1],

Plaintiff,

v.

SSA COMMISSIONER, et al.,

Defendants.

Case No. 25-cv-06625-PHK

**ORDER REMANDING CASE**

Dkts. 14 and 22

## INTRODUCTION

Plaintiff J.J. brings this action under the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision by the Commissioner of the Social Security Administration, ("SSA Commissioner"), denying Plaintiff's applications for disability benefits. [Dkt. 10]. The Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 5-6. Plaintiff has filed an Opening Brief, the Commissioner has filed a Response Brief, and Plaintiff has filed a Reply Brief. [Dkts. 14, 22, 25]. The Commissioner has also filed the Administrative Record. [Dkt. 8 (hereinafter "AR")].

After carefully considering the briefing and all relevant documents, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Order.

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the initials of the plaintiff's first and last names in the Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy concerns.

United States District Court
Northern District of California

## BACKGROUND

The following background focuses only on the factual matters and procedural history that are relevant to the Court's analysis herein.

On May 3, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Act, as well as supplemental security income under Title XVI of the Act, alleging disability beginning on March 9, 1998. [AR 18, 264-91]. Plaintiff's claims were initially denied on January 10, 2023 based on a finding that Plaintiff's alleged schizoaffective disorder was not "severe enough to be considered disabling." [AR 117]. Plaintiff's request for reconsideration was denied on November 17, 2023. [AR 127–146].

On January 11, 2024, Plaintiff timely submitted a Disability Appeal and requested a hearing, which took place telephonically before Administrative Law Judge Deanna Sokolski ("ALJ") on August 13, 2024 (hereinafter, the "Hearing"). [AR 147-49, 42–76]. On August 9, 2024, Plaintiff, through counsel, amended his alleged onset date to May 3, 2022, nullifying Plaintiff's Title II claim. [AR 338; Dkt. 14 at 4]. On October 16, 2024, the ALJ issued a decision finding Plaintiff not disabled. [AR 15–41]. On December 9, 2024, Plaintiff filed a request for review by the Appeals Council, which was denied on June 10, 2025, leaving the ALJ's decision as the final decision of the Commissioner of Social Security in Plaintiff's case. [AR 261–63, 1–6]. On August 6, 2025, Plaintiff commenced this action for judicial review of that final decision. [Dkt. 1].

The ALJ's October 16, 2024 written decision followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 15–41]. The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 3, 2022, the amended date of onset. [AR 21]. At step two, the ALJ concluded that

Plaintiff has the following severe impairments: schizophrenia, post-traumatic stress disorder (PTSD), mood disorder/depressive disorder, personality disorder, and unspecified neurocognitive disorder. *Id.* At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [AR 23–24].

Before reaching step four, the ALJ assessed the medical opinions of record, discounting some portions and admitting others, to inform the construction of Plaintiff's RFC [AR 24–33].

At step four, the ALJ found that Plaintiff had no past relevant work. [AR 33]. At step five, the ALJ relied on a vocational expert—as well as Plaintiff's age at the time of filing (41), past relevant work experience, and limited education—to determine that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." [AR 33-35].

## STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

"Substantial evidence" is "'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). In evaluating whether substantial evidence supports a finding, the Court "must review the

administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.").

**ANALYSIS**

Under the five-step, sequential evaluation process, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.* A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

Plaintiff challenges the ALJ's decision (which became the Commissioner's final decision for purposes of judicial review) on several grounds. First, Plaintiff asserts that the ALJ failed to meet the "clear and convincing" threshold in discounting Plaintiff's statements regarding the extent of his pain and resulting limitations relative to the medical evidence of record. [Dkt. 14 at 6-12]. Second, Plaintiff contends that the ALJ did not accord proper weight to medical evidence, specifically the evaluations of Dr. Krikorian, Dr. Karyadi, and Dr. Wiebe. *Id.* at 12-17. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC and the subsequent step five determination that Plaintiff was capable of performing work in the national economy. *See id.* at 18-20. Fourth, Plaintiff argues that, at step three, the ALJ erred in deciding that Plaintiff did not meet a listing for any of the severe impairments identified at step two. *See id.* at 17–18.

Plaintiff asserts that the record has been fully developed, that "[t]here are no outstanding issues that must be resolved to make a disability determination," and that this case meets the "credit-

as-true" rule. *Id.* at 20-21. Plaintiff therefore requests that the Court grant summary judgment for Plaintiff, reverse the decision of the Commissioner, and remand with instructions to award benefits or, alternatively, remand for further administrative proceedings. *Id.* at 21.

The Commissioner argues in response that (1) the ALJ properly found Plaintiff's testimony not fully supported by the record; (2) the ALJ properly assessed the medical evidence; (3) the ALJ assessment of Plaintiff's RFC is supported by substantial evidence and on that basis the ALJ properly found that Plaintiff is capable of performing work in the national economy; and (4) Plaintiff fails to meet his burden that he meets a listing for any of the severe impairments identified at step two. [Dkt. 22 at 3-18]. The Commissioner requests that this Court affirm the ALJ's decision and deny the Plaintiff's request for remand, reversal, or payment of immediate benefits. *Id.* at 20. The Commissioner argues that if the Court finds error in the ALJ's decision, the proper remedy is to remand the case for further proceedings. *Id.* at 19–20.

The Court addresses each of Plaintiff' s asserted grounds for reversal in turn.

## I. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S STATEMENTS

Plaintiff argues that the ALJ erred in evaluating Plaintiff's testimonial statements, including those regarding the intensity and limiting effects of his impairments, which are inconsistent with the ALJ's RFC assessment of Plaintiff's limitations. [Dkt. 14 at 6-12]. The Commissioner argues that the ALJ properly found that Plaintiff's alleged level of limitation was not fully supported by the record and accounted for Plaintiff's subjective testimony into the RFC. [Dkt. 22 at 8-12].

"[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The Ninth Circuit has established a two-part analysis for evaluating the extent to which a claimant's symptoms testimony must be credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant satisfies the first step of this analysis, and there is no

United States District Court
Northern District of California

evidence of malingering, [then in the second step] the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The "clear and convincing" standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102) (remaining citations omitted); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995)) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15).

"An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)). However, the ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Barnhart*, 400 F.3d at 681). Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests an opposite result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d 1450, 1456 (9th Cir. 1984)).

In the written decision, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms." [AR 26]. Because the ALJ made no finding that Plaintiff was malingering, the ALJ was required to give "specific, clear, and convincing reasons" in support of the adverse credibility finding. *See Garrison*, 759 F.3d at 1014-15. This standard "requires an ALJ to show [their] work." *Smartt*, 53 F.4th at 499. However, the

United States District Court
Northern District of California

standard does not require the ALJ "to perform a line-by-line exegesis of the claimant's testimony" or "to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.

In the second step, the ALJ concluded that "[t]he objective medical evidence partially substantiates the degree of severity alleged by the [Plaintiff]", but that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [AR 27].

The ALJ recounted the Plaintiff's testimony at the Hearing regarding the severity of his mental impairments, the accuracy of which neither party disputes. *See* [AR 25; Dkt. 14 at 12; Dkt. 22 at 9]. The ALJ's summary of Plaintiff's Hearing testimony is as follows:

> The claimant testified he had been seeing a therapist for two years and he was prescribed medication. He stated his medication was helpful, it minimized the voices, and helped him sleep. He testified he still heard voices but they were not as aggressive and not as clear with his medication. He testified he sometimes went two days of the week without eating, he showered 2 days a week, and he had days when about three days a week he could not get out of bed. He stated it was hard to concentrate, he had trouble remembering, and he needed reminders to attend his appointments. He testified he had a tendency to make unreasonably dangerous decisions and did not think about consequences. He stated he was able to concentrate when he wrote poetry as a stress reliever. He testified to panic attacks at least three times a month, usually occurring when he is around a lot of people. He testified he saw things that were not there, such as shadow figures and ghosts, and he heard voices directing him to do things. He stated his medication caused side effects including dry mouth, increased appetite, and drowsiness and he only took half doses when he had to go somewhere so he did not fall asleep on the bus.

[AR 25].

The ALJ outlined the factors considered—among them Plaintiff's daily activities, other symptoms, precipitating and aggravating factors, medications, other treatment or measures, and longitudinal medical history—in making the determination that Plaintiff's statements regarding the "intensity, persistence and limiting effects" of his symptoms were not entirely consistent with the medical record. [AR 27]. Subsequently, the ALJ recited facts from the record pertinent to her evaluation of Plaintiff's testimonial statements under the previously established criteria. [AR 27–29].

The ALJ asserts that Plaintiff's testimonial statements were "not entirely consistent" with the evidence in the record but that the objective medical evidence "partially substantiates the degree

of severity alleged by the [Plaintiff]." [AR 26]. However, these statements are "boilerplate" by way of "introductory remark" that do not "identify what parts of the claimant's testimony were not credible and why." *See Lambert*, 980 F.3d at 1277 (citation omitted). In the required detailed reasoning, while the ALJ cited medical evidence from the record, the ALJ's written decision failed to "specifically identify" which statements from Plaintiff's testimony were inconsistent with the record or specifically why each such portion was not credible. [AR 27–29]; *see id.* at 1277-89 (citation omitted) ("providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."). Therefore, under applicable legal standards discussed above, the ALJ erred in discounting Plaintiff's testimonial statements by not identifying the partes which were not credible and why.

Harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Here, incorporating some of Plaintiff's uncontroverted testimonial statements (such as those pertaining to the side-effects of his medication and severity of his symptoms) into a modified RFC is not shown to be inconsequential to the nondisability determination. The record demonstrates that the discounting of Plaintiff's testimony was a factor resulting in the conclusion as to Plaintiff's RFC. Accordingly, the record indicates that incorporating Plaintiff's testimony would have a consequential or material effect on the decision regarding RFC and thus the work Plaintiff can perform in step five of the analysis.

Accordingly, the Court concludes that the ALJ failed to provide sufficiently "specific, clear, and convincing reasons" for discounting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms resulting from his mental impairments. *Garrison*, 759 F.3d at 1014–15. Remand on these issues is, therefore, required. *See Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) ("The errors discussed above are significant enough, and sufficiently intertwined with the aspects of the ALJ's analysis that find support in the record, that we cannot conclude they were harmless.").

## II. WHETHER THE ALJ PROPERLY EVALUATED MEDICAL SOURCE OPINIONS

Next, Plaintiff argues the ALJ did not accord the proper weight to the medical opinions of Dr. Krikorian, Dr. Karyadi, and Dr. Wiebe, specifically the portions thereof which the ALJ discounted as unpersuasive. *See* [Dkt. 14 at 14–17].

The ALJ has a duty to evaluate all medical source opinions and "evaluate their persuasiveness" based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a)-(c); *see also Woods*, 32 F.4th at 787. "The 'most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).

"Supportability" addresses how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior medical finding(s) will be." *Woods*, 32 F.4th at 791–92 (quoting § 404.1520c(c)(1)) ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'").

"Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Woods*, 32 F.4th at 792 (quoting § 404.1520c(c)(2)) ("Consistency means the extent to which a medical opinion is 'consistent... with the evidence from other medical sources and nonmedical sources in the claim.'").

The ALJ must explain in their decision "how persuasive" they find each medical source opinion and must explicitly address how they "considered the supportability and consistency factors" in reaching those findings. *Woods*, 32 F.4th at 792; *see* 20 C.F.R. § 404.1520c(b)(2).

United States District Court
Northern District of California

However, the ALJ is not required to explicitly discuss any of the remaining three factors, unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). The ALJ's persuasiveness explanation must be supported by substantial evidence. *Woods*, 32 F.4th at 792.

The Court finds that the ALJ conducted the appropriate assessments of the medical opinions of Dr. Krikorian, Dr. Karyadi, and Dr. Wiebe based on substantial evidence and therefore permissively rendered her evaluations of each. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("If the record would support more than one rational interpretation, we defer to the ALJ's decision.").

**A. Medical Opinion of Dr. Krikorian**

In the written decision, the ALJ found the opinion of Dr. Krikorian to be "somewhat persuasive" with respect to Plaintiff's "limitations in maintaining concentration, attention, and persistence/consistency." [AR 30]. In evaluating supportability, the written decision noted Dr. Krikorian's observations that "claimant did not know the day of the week, was unable to spell 'world' backwards, and was unable to calculate serial 7s." [AR 30].

But the written decision noted other observations in Dr. Krikorian's evaluation that "[did] not support the opined moderate limitations in completing a normal workday/week." [AR 30]. Dr. Krikorian wrote that the Plaintiff "arrived one hour early for the appointment" and "arrived to the appointment by public transit;" was "cooperative and friendly," "engaged," and "easy to establish rapport;" was "properly groomed and appeared to have appropriate hygiene," had "good" eye contact, "coherent" speech, and "unimpaired" memory and attention, "[r]ecited 7 digits forward, 3 digits in reverse, and 5 digits in numerical order," "[r]ecalled 3 out three items immediately and 2 of three words after a 5-minute delay;" had a "[h]appy" mood, "full" and "congruent" affect, "fair" insight, and a "intact, linear, and logical" thought process with "[n]o circumstantiality or preservation;" denied "[c]urrent hallucinations, paranoia, and delusions," and expressed no "plans, means or intent" of suicidal or homicidal ideation. [AR 30, 573–76].

In evaluating consistency with the overall record, the written decision noted inconsistent findings in other sections of the medical record, including external findings that Plaintiff's mood

was worried [AR 625]; Plaintiff was "sleepy or drowsy" [AR 625]; Plaintiff was "tearful" [AR 584]; Plaintiff's speech "was somewhat slow" and affect "was restricted with dissociation tendency, and some lability." [AR 30, 1233]. These other sections of the medical record are reasonably inconsistent with Dr. Krikorian's evaluation of Plaintiff and relevant to the conclusions as to workplace-related limitations. After evaluating Dr. Krikorian's opinion, the ALJ ultimately found that "limitations in interaction with others are consistent with the evidence." [AR 30].

For the forgoing reasons, the Court finds that the ALJ undertook a reasonable supportability and consistency analysis with respect to the components of Dr. Krikorian's testimony which the written decision found to be less than persuasive. Thus, the ALJ's determination in this regard is not shown to be erroneous under the legal standards applicable.

**B. Medical Opinion of Dr. Karyadi**

In the written decision, the ALJ found somewhat persuasive the opinion of Dr. Karyadi, as "some of the opined limitations are supported by Dr. Karyadi's findings." [AR 30]. The written decision found that Dr. Karyadi's opinions regarding Plaintiff's "abilities to perform simple and repetitive tasks, perform detailed and complex tasks, accept instruction from supervisors, and interact with coworkers and the public are supported by his examination findings" and that "these opinions are consistent with the evidence." [AR 30–31]. In evaluating consistency, the written decision noted portions of Dr. Karyadi's opinion that were consistent with other evidence in the record, such as Plaintiff's inability to repeat things back to medical examiners. [AR 31].

However, the written decision found that Dr. Karyadi's opinion placing a moderate limitation on Plaintiff's "abilities to perform work activities without special or additional instruction, maintain regular attendance and complete a workday/week, and deal with stress in the workplace" to be not supported by the evaluation. [AR 30]. With regard to supportability, the ALJ cited Dr. Karyadi's observations that Plaintiff "seemed able to maintain focus and concentration," "responded and worked at a normal rate," "presented with proper grooming and hygiene," was "calm and cooperative," was "linear and organized" in expressing his thoughts, had "normal" speech, did not seem "externally or internally preoccupied," presented with "a normal range of affect," and was "oriented." [AR 585]. Further, the written decision referenced Plaintiff's

United States District Court
Northern District of California

representations that "[h]is medications tend to keep him 'docile' and 'calm'" and make him "less likely to 'do stupid stuff.'" [AR 583]. These observations are reasonably inconsistent with Dr. Karyadi's evaluation of Plaintiff with regard to Dr. Karyadi's recommendations as to moderate limitations. [AR 31]. Consequently, the ALJ did not err in finding Dr. Karyadi's opinion regarding the Plaintiff's ability to perform work activities without special instruction unsupported.

The Court finds that in finding Dr. Karyadi's opinion only somewhat persuasive, the ALJ properly evaluated the consistency and supportability of the opinion regarding Plaintiff's ability to perform work. The ALJ's explanations were therefore supported by substantial evidence in addressing the supportability and consistency of Dr. Karyadi's opinion. *Woods*, 32 F.4th at 792.

### C. Medical Opinion of Dr. Wiebe

In the written decision, the ALJ found the opinion of Dr. Wiebe somewhat persuasive. [AR 31]. The ALJ found that Dr. Wiebe's identification of "moderate limitations in understanding, remembering, and carrying out very short and simple instructions, maintain focus, attention, and concentration for 2-hour segments, and perform at a consistent pace" were supported by the findings that Plaintiff "demonstrated disorganized reporting with lack of focus, problems with memory, likely blocking, and was easily frustrated and overwhelmed, requiring encouragement." *Id.* However, the ALJ did not find the "marked" limitations in these areas opinioned by Dr. Weibe to be supported by Dr. Weibe's evaluation nor consistent with the overall record. [AR 31–32]. Plaintiff challenges this finding. [Dkt. 14 at 15].

With regard to supportability, the written decision noted the following evidence from Dr. Wiebe's evaluation: Plaintiff was "oriented," "did not appear to be responding to internal stimuli," and was "able to correctly repeat one of two complex sentences," scoring in the "low average range of functioning." [AR 1234–35]. With regard to consistency, the written decision noted the following record evidence: Plaintiff "repeated the three words" and was able to "repeat three digits forward and two digits backward" [AR 585]; Plaintiff was "cooperative and friendly," "engaged," and "easy to establish rapport" [AR 575]; Plaintiff "seemed able to maintain focus and concentration" and "responded and worked at a normal rate" [AR 585]; Plaintiff was "benefitting" from his medication, "evidenced by [a] decrease in AH [auditory hallucinations] and improvement

of mood" [AR 597]; and Plaintiff reported activities of daily living, including being able to "cook and grocery shop without problem," "take public transportation without problems," "pay bills on time," and "keep[] on top of appointments" [AR 585].

Based on this record, the written decision has not been shown to be in error with regard to the finding that Dr. Wiebe's opinion mental function limitations was unsupported and inconsistent with the evidence of record. The evidence the written decision relies upon reasonably relates to the assessment of Plaintiff's degree of limitation with respect to basic work-related mental functioning. Therefore, having undertaken an appropriate supportability and consistency analysis, the ALJ's discounting of the "marked" limitations opined by Dr. Wiebe is supported by substantial evidence. [AR 31].

## III. WHETHER THE ALJ SUPPORTED THE RFC WITH SUBSTANTIAL EVIDENCE

Next, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ failed to account for limitations associated with the mental health impairments that the ALJ found as "severe," arguing that these severe impairments preclude all work. [Dkt. 14 at 19]. Additionally, Plaintiff contends that the RFC "did not account for Plaintiff's accurate time off task or likely absences from work secondary to his impairments." *Id.* The Commissioner argues that the ALJ "properly assessed the RFC based on the record as a whole" and thus did not commit harmful legal error. [Dkt. 22 at 18–19].

At step two, the written decision found that Plaintiff has severe mental impairments consisting of "schizophrenia, post-traumatic stress disorder (PTSD), mood disorder/depressive disorder, personality disorder, and unspecified neurocognitive disorder." [AR 21]. The written decision found persuasive portions of the medical opinions of record.

Dr. Karyadi opined that Plaintiff's "ability to perform simple and repetitive tasks was unimpaired" and that Plaintiff "was moderately impaired in his ability to: perform detailed and complex tasks and might struggle on activities involving calculations, concentrations, abstract thinking, and memory demands; accept instruction from supervisors . . . [sic] interact with coworkers and the public and might have difficulty interacting with the public and coworkers." [AR

30].

Dr. Krikorian opined that Plaintiff "had no limitation in his ability to understand, remember, and perform simple/repetitive written and oral instructions and interact appropriately with others, including co-workers, supervisors, and the public" and "had mild impairment in his ability to understand, remember, and perform complex/detailed written and oral instructions and perform activities within a schedule and maintain regular attendance." [AR 30].

Dr. Wiebe opined that Plaintiff had "moderate. . . limitation in his ability to: understand, remember, and carry out very short and simple instructions; maintain focus, attention, and concentration for 2-hour segments; and perform at a consistent pace without an unreasonable number and length of rest periods." [AR 31]. Dr. Wiebe's opinion stands in contrast to Dr. Krikorian's opinion discussed above (that Plaintiff had mild impairment). [AR 30–31]. For purposes of this Court's review, the Court defers to the ALJ's resolution of this conflicting opinion evidence in the medical record as reflected in the RFC. *See Smartt,* 53 F.4th at 494 (giving deference to the ALJ where there exists more than one rational interpretation of the evidence).

The written decision explicitly discounted opinion evidence from two experts, Drs. Gross and Moura, who opined that Plaintiff only had "mild" or "moderate" limitations in terms of mental impairments with associated RFC limitations. [AR 32-22]. After summarizing the overall record and finding these opinions unpersuasive, the written decision concluded that "the evidence is consistent with severe mental impairments with associated residual functional capacity limitations" and that "the evidence is consistent with additional mental limitations." [AR 32–33].

Relying on the uncontroverted portions of the medical opinion evidence summarized above, the written decision formulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; must avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery; and can understand, remember, and carry out simple instructions in an environment not involving work requiring a specific production rate such as assembly line work or work that requires hourly quotas but can perform work involving simple work-related decisions, occasional workplace changes, occasional interaction with supervisors and coworkers, and no interaction with the public as part of the job duties.

[AR 24].

In formulating the RFC, the written decision does not directly explain any defect in Dr. Karyadi's opinion that Plaintiff was "moderately" impaired in his ability to "accept instruction from supervisors" and "interact with coworkers and the public." [AR 30]. As quoted above, the written decision's formulation of the RFC allows "occasional interaction with supervisors and coworkers" but that formulation does not discount or explain Dr. Karyadi's opinion. [AR 24]. By contrast, the written decision discusses Dr. Karyadi's opinion in connection with formulating the RFC to include a restriction specifying "no interaction with the public as part of the job duties." *Id.* The written decision does not appropriately explain why Dr. Karyadi's opinion impacts the RFC with regard to interaction with the public, but not with regard to interactions with supervisors and coworkers. Accordingly, the written decision does not properly formulate the RFC because the written decision does not take into account Dr. Karyadi's opinion on the limited level of interaction Plaintiff may have with other people in the workplace. For these reasons, the written decision is erroneous under applicable legal standards, because a review of the record indicates that (by not grappling with this opinion) the ALJ substituted her own judgment for that of Dr. Karyadi in determining Plaintiff's RFC.

In addition, the ALJ erred by not reconciling the vocational expert's testimony with the uncontroverted portions of medical testimony. At the Hearing, the vocational expert testified that no work is available in the national economy for a hypothetical individual who has the ALJ's RFC in addition to the limitation of being "off-task 20 percent of the time in an eight-hour work day." [AR 71]. The vocational expert further testified that an off-task percentage of "over ten percent" or absences exceeding once per month precludes all work. [AR 72]. The uncontroverted portions of medical evidence that the ALJ admitted for considering Plaintiff's RFC included (1) Dr. Wiebe's opinion that Plaintiff had a "moderate" limitation in his ability to "maintain focus, attention, and concentration *for 2-hour segments*; and perform at a consistent pace *without an unreasonable number and length of rest periods*" and (2) Dr. Krikorian's opinion that Plaintiff "had a mild impairment in his ability to…*maintain regular attendance*." [AR 30–31] (emphasis added). This medical evidence, which the written decision does not discount directly and for which the written

decision does not cite contradictory evidence, would appear relevant to (if not satisfy) the very criteria stated by the vocational expert for precluding all work. The vocational expert testified that a hypothetical worker with Plaintiff's RFC who was off-task over ten percent of the time would be precluded from all work; Dr. Weibe testified that Plaintiff has a moderate limitation in his ability to maintain focus for 2-hour segments and would require an unreasonable number and length of rest periods to work at a consistent pace. The vocational expert testified that a hypothetical worker with Plaintiff's RFC who was absent more than once a month would be precluded from all work; Dr. Krikorian opined that Plaintiff has a mild impairment in his ability to maintain regular attendance (and, as noted, Dr. Weibe opined that a hypothetical worker with this RFC would need an unreasonable number and length of rest periods). The written decision does not reconcile these medical opinions or their impact on the vocational expert's testimony. That lack of discussion of the interplay between these opinions is legal error under the standards applicable and is thus grounds for reversal and remand. *See Ninh M. v. Bisignano,* 827 F. Supp. 3d 1282, 1289–91 (N.D. Cal. 2026) (finding that the ALJ's failure to fully account for several of the specific and credible moderate limitations listed in a medical opinion rendered the ALJ's RCF finding unsupported by substantial evidence and the ALJ's questioning of the vocational expert erroneous).

Finally, Plaintiff's Hearing testimony corroborates the uncontroverted medical opinions discussed above. Plaintiff testified that there were days when about three days a week he could not get out of bed. [AR 25, 72]. The written decision does not address this testimony's impact on the vocational expert's opinion that exceeding work for one day per month would preclude all work. Additionally, Plaintiff testified that he "had a tendency to make unreasonably dangerous decisions and did not think about consequences." [AR 25]. This testimony is noteworthy in light of Dr. Karyadi's opinion that Plaintiff "was moderately impaired in his ability to … accept instruction from supervisors[,]... interact with coworkers[,]... and might have difficulty interacting with … coworkers." [AR 30]. The written decision does not directly address Plaintiff's testimony, and its interplay or impact in light of the opinion evidence, and as such does not explain how the written decision's RFC formulation could properly allow absences as frequently as Plaintiff testified about or allow for occasional interactions with supervisors and coworkers. Fundamentally, the written

decision does not explain whether, how, and why Plaintiff's testimony discussed above was discounted in reaching the RFC formulation. If Plaintiff's testimony is consistent with the record and admissible, such testimony should be incorporated into the formulation of the RFC. *See, e.g., M.M. v. O'Malley,* 732 F. Supp. 3d 1126, 1133 (N.D. Cal. 2024) (citing *Ferguson,* 95 F.4th at 1199) (finding that by not identifying which of the Plaintiff's alleged symptoms or limitations the ALJ discounted or why "the ALJ in M.M.'s case did not 'show their work' to the degree required, the determination of M.M.'s residual functional capacity was conclusory and not supported by substantial evidence.").

For all these reasons, the Court finds that the ALJ committed reversible error in formulating Plaintiff's RFC. Accordingly, the Court remands the matter for further proceedings and evaluation consistent with the issues discussed herein.

## IV. WHETHER PLAINTIFF MET HIS BURDEN TO SHOW THAT HE MEETS A LISTING

Plaintiff next argues that "[i]f the ALJ had properly assessed [Plaintiff's] severe impairments and residual functional capacity, the ALJ would have found Plaintiff met a listing" in step three of the ALJ's analysis. [Dkt. 14 at 17–18]. The Commissioner argues that Plaintiff fails to demonstrate that he meets a listing and that the record as a whole supports the ALJ's interpretation. [Dkt. 22 at 17–18].

At step three of the evaluation, the claimant "bears the burden of proving that he has an impairment that meets or medically equals the criteria of a listing." *Reedom v. Comm'r of Soc. Sec.*, No. 1:21-CV-01645-SAB, 2022 WL 17406415, at *7 (E.D. Cal. Dec. 2, 2022). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff argues that "[t]he ALJ declined to decide that [Plaintiff] did not meet the listings for 12.02, 12.03, 12.04, 12.05, 12.06, 12.08, and 12.15" and cites medical evidence from the record. *See* Dkt. 14 at 17–18; *see generally* Dkt. 25.

Listing 12.03 (schizophrenia spectrum and other psychotic disorders) includes

schizoaffective disorder, is characterized by hallucinations (among other behaviors), and includes paranoia among the symptoms. *See* 20 CFR Appendix 1 to Subpart P of Part 404. Plaintiff argues that Dr. Karyadi opined that Plaintiff's "presentation is consistent with schizoaffective disorder. He reported depressive, anxiety, neurocognitive, and psychotic symptoms." [Dkt. 14 at 17 (quoting AR 587)]. Plaintiff argues that Dr. Karyadi opined that Plaintiff "gets paranoid 'all the time,' especially when he is 'in a room full of people.'" *Id.* (quoting AR 584). While the written decision acknowledges that Plaintiff "reported hallucinations", *see* [AR 23], the written decision does not analyze Listing 12.03 specifically or in the particular context of this record evidence.

Similarly, Listing 12.08 (personality and impulse-control disorders) includes paranoid and intermittent explosive disorder, and the symptoms include hypersensitivity to negative evaluation, and inappropriate, intense, impulsive anger. *See* 20 CFR Appendix 1 to Subpart P of Part 404. As noted above, Plaintiff argues that Dr. Karyadi opined that Plaintiff gets paranoid all the time. [Dkt. 14 at 17 (quoting AR 584)]. Plaintiff further argues that Plaintiff "has exhibited recurrent, impulsive, aggressive behavioral outbursts, including throwing rocks at people, spitting at firefighters, and chasing people with broken glass." *Id.* (citing AR 470, 521, 741, 752, 753, 760, 764, 769, 905, 1008, and 1021). Plaintiff additionally argues that Dr. Wiebe opined that Plaintiff has "marked impairments" in getting along and working with other people without "excessive irritability, sensitivity, argumentativeness … and respond appropriately to criticisms from supervisors." *Id.* (citing AR 1249). The written decision does not analyze Listing 12.08 in particular in the context of this record evidence.

The written decision's failure to address this record evidence (much of which is uncontradicted medical opinion) is legal error and insufficient to affirm the written decision's conclusion that Plaintiff failed to meet a listed impairment at step three. *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 U.S. App. LEXIS 22188, at *2 (9th Cir. Aug. 10, 2022) (finding reversible error where the ALJ failed to address evidence "that suggests a possibility the claimant's condition meets or equals a listed impairment").

## V. WHETHER TO REMAND FOR AN AWARD OF BENEFITS

With regard to requested relief, Plaintiff asks the Court to remand the case for the payment

United States District Court
Northern District of California

of benefits, or alternatively, for further proceedings. [Dkt. 14 at 21]. When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted).

A remand for award of benefits is proper, however, where (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th. Cir. 2017) (citation omitted). Even if all three requirements are satisfied, the Court retains flexibility to determine the appropriate remedy. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

The first factor for a remand for an award of benefits is met because the ALJ committed reversible legal error in failing to specifically identify which of Plaintiff's testimonial statements she discounted. The second factor is not met, however, because further proceedings are necessary so that Plaintiff's uncontroverted opinion evidence and testimony may be considered in formulating an appropriate RFC and subsequent assessment of whether such a revised RFC precludes work. *See Treichler*, 775 F.3d at 1106. ("[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony."). Additionally, as noted above, further proceedings are necessary to determine whether Plaintiff meets a Listing in light of the uncontroverted evidence discussed above. The third factor for a remand for an award of benefits is not met because the ALJ is responsible for determining which of Plaintiff's statements to discount and for formulating a revised RFC that is reflective of the uncontroverted portions of Plaintiff's testimony and the medical opinion of record that were not appropriately reflected in the original RFC. *See Diedrich*, 874 F.3d at 638 ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."). Further, the ALJ is responsible for determining what evidence to discount to determine if a Listing was met.

The current record does not establish whether there are any jobs in the economy available

for an individual with an uncertain RFC, which would require further testimonial from a vocational expert. *See Treichler*, 775 F.3d at 1105 ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Accordingly, the Court determines that the appropriate remedy here is to remand for further proceedings.

**CONCLUSION**

For all the reasons discussed herein, the Court **ORDERS** that the Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

**This RESOLVES** Dkts. 14 and 22.

**IT IS SO ORDERED.**

Dated: September 14, 2026

PETER H. KANG
United States Magistrate Judge